**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Igor Daniloff Pursuant to 28 U.S.C. § 1782 | **Civil Case No. 1:18-mc-742**<br><br>***EX PARTE* PETITION FOR ASSISTANCE IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782** |

***EX PARTE* PETITION FOR ORDER UNDER 28 U.S.C. § 1782 PERMITTING BLOOMFIELD INVESTMENT RESOURCES CORP. TO ISSUE SUBPOENA FOR THE TAKING OF A DEPOSITION AND THE PRODUCTION OF DOCUMENTS FROM IGOR DANILOFF**

Based upon the annexed declaration of Steven Cooper, Bloomfield Investment Resources Corp. ("Bloomfield" or "Petitioner") respectfully petitions this Court *ex parte* for an Order, pursuant to 28 U.S.C. § 1782, compelling Igor Daniloff ("Respondent"), an individual located within this District, to produce discovery for use in a proceeding in the Netherlands.

## I.  INTRODUCTION

1.      Petitioner seeks discovery from Respondent for an adjudicative proceeding currently pending in the Rotterdam District Court in the Netherlands (the "Dutch Court") styled as Case No. C/10/479791 (the "Dutch Action").

2.      The Dutch Action arises out of a failure by a Russian poultry production corporation called Open Joint Stock Company United Meat Group ("UMG") to repay a $25 million loan made by Petitioner to UMG (the "UMG Loan"). UMG is the defendant in the Dutch Action. On June 17, 2015, Petitioner obtained an order of attachment from the Dutch Court attaching UMG's bank account in the Netherlands (the "Dutch Summary Proceedings"), and in August 2015 filed its plenary action, *i.e.*, the Dutch Action, against UMG to recover the balance of the UMG Loan. Petitioner believes that UMG has misused or misappropriated the proceeds of the UMG Loan.

3.      On November 7, 2017, the Dutch Court held an oral hearing in the Dutch Action on jurisdictional issues. On January 10, 2018, the Dutch Court ruled in favor of Bloomfield and accepted jurisdiction over the Dutch Action. The Dutch Court ordered UMG to file a statement of defense on the merits by March 21, 2018.

4.      UMG has four subsidiaries: ZAO Bashkirskiy Broiler ("Bashkirskiy Broiler"); ZAO Khelbnaya Baza 67; ZAO Bashkirian Grain Company; and ZAO Raevskiy Elevator. Bashkirskiy Broiler is a fully-owned subsidiary of UMG and was responsible for managing and creating the infrastructure for UMG's poultry production.

5.      At all times relevant, Respondent was director of Bashkirskiy Broiler. As director, Respondent had control over Bashkirskiy Broiler's day-to-day operations and as such, is aware of how the UMG Loan was or was not used for the benefit of UMG. Respondent was an integral part of UMG's relationship with Petitioner and was involved in numerous conversations with Petitioner concerning the UMG Loan.

6.      In addition, proceeds from the UMG Loan were improperly transferred to a pig farming and pork production company called JSC Agro-Industrial Complex "Maximovsky" ("APK"), in violation of the terms of the UMG Loan. Respondent is a director and also serves as the Chief Executive Officer of APK.

7.      Accordingly, Respondent possesses highly relevant documents and information relating to, *inter alia*, the UMG Loan: the proceeds of the UMG Loan, including information related to the alleged unauthorized transfers made to APK; UMG's business operations; the course of dealing between and among Petitioner and UMG; and other issues to be adjudicated in the Dutch Action. The documents and information in Respondent's possession will aid the Dutch

Court in resolving the issues, and ultimately assist Petitioner in finally obtaining the return of its money.

8.      Petitioner meets all the statutory criteria for the issuance of an order allowing the requested discovery. *See* 28 U.S.C. § 1782. Additionally, all the discretionary factors that this Court may consider favor granting this Petition. Petitioner thus respectfully requests that its Petition be granted. A proposed order has been appended to this Petition as "Appendix B."

## II.    THE PARTIES AND OTHER RELEVANT ENTITIES

9.      Petitioner is a British Virgin Islands company forming part of the Reuben Brothers group of companies (the "Reuben Brothers"). The founders of the Reuben Brothers are businessmen and philanthropists David Reuben and Simon Reuben.

10.     Respondent is a New York resident and U.S. national. *See* Cooper Decl. Ex. A. At all times relevant to the Dutch Action, he was director of Bashkirskiy Broiler, a fully-owned subsidiary of UMG as well as director and CEO of APK.

11.     UMG is a Russian company founded in 2009 and is in the business of poultry production, grain production, and animal feed production. *See* http://www.unitedmeat.ru/en/about (last visited January 31, 2018). UMG's subsidiaries are domiciled in Bashkortostan, in eastern Russia. UMG was established for the purpose of becoming the first vertically integrated poultry business in its region.

## III.    THE NETHERLANDS LITIGATION

12.     UMG is obligated to repay the UMG Loan of $25 million, which became due in November 2013.  UMG agreed on a number of occasions over the course of 2014 to repay the UMG Loan and ultimately finalized a repayment plan in November 2014. As part of its repayment plan, UMG opened an account at the Demir-Halk Bank (the "DHB Account") in the

Netherlands that was under the joint control of UMG and Petitioner and transferred $15 million into that account.

13.     Petitioner and UMG agreed the $15 million in the DHB Account would be used to partially repay the UMG Loan to Petitioner, and that the parties would thereafter agree on the timing of the repayment of the remainder of the UMG Loan. Importantly, UMG issued a resolution authorizing a two-signature policy on the DHB Account whereby representatives of Petitioner and UMG both had to agree to any transactions concerning the DHB Account.

14.     In May 2015, UMG made a partial repayment of the UMG Loan in the amount of $2 million to Petitioner.

15.     On June 2, 2015, UMG asked DHB to terminate the two-signature policy and unilaterally sought to transfer $2.9 million out of the DHB Account without obtaining Petitioner's consent.

16.     After learning of UMG's attempt to terminate the two-signature policy, on June 16, 2015, Petitioner initiated the Dutch Summary Proceedings by requesting that the Dutch Court levy prejudgment attachment by garnishment on the DHB Account (the "Attachment Petition"). Petitioner brought the Attachment Petition to prevent UMG from proceeding with this unauthorized transfer from the DHB Account. Petitioner also represented that it would pursue legal action against UMG seeking recovery of the unpaid UMG Loan.

17.     On June 17, 2015, Petitioner obtained an order of attachment in the Dutch Summary Proceedings to levy prejudgment attachment by garnishment of the funds in the DHB Account for a period of 28 days (the "DHB Attachment").

18.     Thereafter, on July 2, 2015, UMG petitioned the Dutch Court to lift the DHB Attachment (the "First UMG Petition").

- 4 -

19.     In the First UMG Petition, UMG argued it was not obligated to repay Petitioner because Petitioner had not made a loan to UMG but, rather, was an indirect shareholder in UMG through an investment into a fund called the Synergy Hybrid Fund, Ltd.

20.     As such, UMG petitioned the Dutch Court to lift the DHB Attachment in full and provide UMG with access to the funds in the DHB Account. Specifically, UMG claimed that it needed access to the funds to make interest payments owed to the holders of bonds issued by UMG Finance B.V., a wholly owned subsidiary of UMG. According to UMG, those payments had become due on June 22, 2015.

21.     On July 9, 2015, the Dutch Court held an oral hearing during which the parties presented their respective positions, and on July 15, 2015, issued a written decision (the "July 15 Order").

22.     In the July 15 Order, the Dutch Court maintained the attachment over the DHB Account, but released $3.3 million for the sole purpose of allowing UMG to pay interest due on the bonds issued by UMG Finance B.V.

23.     The Dutch Court based the July 15, 2015 Order in large part on the following finding:

> The statement, or witness statement, and the e-mails submitted by Bloomfield lend support to the view adopted by Bloomfield, that from the very start it had been the express intention of the parties—in the persons of [David] Reuben and [Elliot] Daniloff—that the amount of USD 25,000,000 had been made available as a loan/deposit. More in particular the extensive and detailed witness statements submitted by Bloomfield point in that direction.
>
> The report of the meeting of 26 November 2014 and the specific opening of a bank account in the Netherlands further to the agreements that had been made, into which account subsequently USD 15,000,000 was deposited, lend support to Bloomfield's view that UMG had committed itself to repaying USD 25,000,000 to Bloomfield.

24.     The Dutch Court also noted that it needed additional evidence to ultimately resolve the merits of the dispute, which should be decided in the context of a separate lawsuit against UMG. As the Dutch Court stated:

> In order to be able to decide which party is right, a further review will be required, with more evidence being furnished by the parties, which will go beyond the scope of these preliminary relief proceedings. The judge in preliminary relief proceedings does not at all rule out that both the contents of the 'subscription agreement' and the verbal agreements between Reuben and Daniloff, when viewed in relation to each other, together with the agreements made at a later stage, will in the end be decisive when it comes to answering the question if UMG is under an obligation to repay USD 25,000,000.

25.     Finally, the Dutch Court denied UMG's requests that Petitioner be subject to a penalty payment of €5 million per day if it sought new attachments against UMG, and that Petitioner be held liable for the costs of the proceeding.

26.     At the Dutch Court's direction, Petitioner commenced a plenary action against UMG, *i.e.*, the Dutch Action, by writ of summons dated August 11, 2015. The dispute between Petitioner and UMG concerns whether UMG is under an obligation to repay the balance of the UMG Loan.

27.     On December 29, 2015, UMG filed — for a second time — a petition to lift the DHB Attachment granted in the Dutch Summary Proceedings (the "Second UMG Petition") claiming that it needed the attached funds to make another interest payment to the holders of bonds issued by UMG Finance B.V., and arguing that Petitioner's claim was without merit.  By judgment dated January 14, 2016, the Dutch Court dismissed the Second UMG Petition.

28.     Subsequently, Petitioner and UMG entered into settlement discussions resulting in a non-binding term sheet dated June 20, 2016 (the "Non-Binding Term Sheet"). As set forth in the Non-Binding Term Sheet, Petitioner agreed that it would lift the DHB Attachment as long as UMG, among other things, repaid the amount still due on the UMG Loan—$23 million. Specifically, the parties agreed that UMG would immediately repay $3 million to Petitioner through one of its indirect shareholders. To ensure repayment, this $3 million obligation was secured by depositing $3 million in escrow that would be released to Petitioner if it did not receive the repayment within 30 calendar days (the "Escrow Amount"). The parties further agreed that UMG would alter its corporate structure and repay the remaining $20 million to Petitioner, with priority, from its earnings. Notably, any obligations set forth in the Non-Binding Term Sheet were contingent on the parties entering into a subsequent binding agreement.

29.     Ultimately, UMG refused to enter into a binding agreement memorializing the terms set forth in the Non-Binding Term Sheet. After further negotiations, the parties entered into an escrow agreement, dated August 31, 2016 (the "Escrow Agreement"). Cooper Decl. Ex. B. Pursuant to the Escrow Agreement, the parties agreed to raise the original Escrow Amount to $4.5 million (the "Modified Escrow Amount") and further agreed that the Modified Escrow Amount would be released to Petitioner if UMG failed to meet certain obligations set forth in the Escrow Agreement. Specifically, the Modified Escrow Amount would be released to Petitioner if, among other things, UMG failed to timely (i) provide documents demonstrating that UMG had restructured its governance as set forth in the Non-Binding Term Sheet or (ii) provide proof of payment of the $3 million originally promised to Bloomfield in the Non-Binding Term Sheet. Pursuant to the Escrow Agreement, UMG had forty-two days to meet its obligations and pay Petitioner the $3 million originally promised under the Non-Binding Term Sheet.

30.     In order to fund the Modified Escrow Account, Petitioner agreed to lift the attachment on the DHB Account, with the stipulation that $4.5 million be transferred to the Modified Escrow Account. Cooper Decl. Ex. C.

31.     Importantly, as set forth in the Escrow Agreement, the parties also agreed to stay the Dutch Action to allow UMG to meet its obligations under the Non-Binding Term Sheet and the Escrow Agreement.

32.     UMG failed to meet its obligations under the Escrow Agreement, even after Petitioner extended its deadline to do so. As a result, on December 1, 2016, Petitioner directed the escrow agent to release the full Modified Escrow Amount—$4.5 million—to Petitioner (Cooper Decl. Ex. D), leaving a balance of $18.5 million still owed to Petitioner.

33.     After additional settlement negotiations stalled, on April 4, 2017, Petitioner requested that the Dutch Court lift the stay of the Dutch Action, as permitted under the express terms of the Escrow Agreement.

34.     Pursuant to an application made by UMG disputing the Dutch Court's jurisdiction, on November 7, 2017, the Dutch Court held a hearing regarding the same and subsequently—on January 10, 2018—the court ruled in favor of Bloomfield and accepted jurisdiction.

35.     The Dutch Court ordered UMG to file its statement of defense on the merits by March 21, 2018.

36.     A hearing on the merits is expected to take place in the fall of 2018. Importantly, the parties are allowed to submit evidence in support of their claims up until two weeks prior to the hearing on the merits.

## IV.   DISCOVERY REQUESTED

37.   Respondent played an integral role in the use of the proceeds of the UMG Loan by UMG, which goes to the core of the dispute before the Dutch Court. Accordingly, Respondent possesses documents and information bearing directly upon the issues in the Dutch Action.

38.   As set forth in further detail in the subpoenas, Petitioner seeks discovery concerning the transfer of the UMG Loan to UMG; the subsequent use of the loan proceeds; UMG and Bashkirskiy Broiler's financial condition; Respondent's role in UMG; the course of dealing between and among Petitioner and UMG; and other relevant documents and information.

39.   In addition to requests for the production of documents from Respondent, Petitioner seeks a deposition of Respondent concerning the subject matters described above and in the subpoena.

40.   Significantly, in a similar action before the United States District Court for the Southern District of New York (the "S.D.N.Y. Court") captioned *In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Elliot Daniloff, et al.*, Case No. 1:15-mc-00220, the S.D.N.Y. Court already considered and granted a similar § 1782 application made by Petitioner for discovery for use in the Dutch Action (the "S.D.N.Y. Application"). See Cooper Decl. Ex. E.

## V.   PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY

### A.   Section 1782 Governs this Court's Authority to Order Discovery.

41.   28 U.S.C. § 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the

document or other thing be produced, before a person appointed by
the court.

42.     Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004).

43.     Indeed, this Circuit has repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under § 1782. *See, e.g.*, *Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993) (quoting S. Rep. No. 88-1580, at 7, *reprinted in* 1964 U.S.C.C.A.N. 3782) ("The primary intent of the amendments [to § 1782] was to 'clarif[y] and liberalize . . . existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States'"); *In re Malev Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992) (stating that § 1782 is aimed to "prompt foreign [countries] to follow our generous example and provide similar assistance to our court systems"). A district court should consider a § 1782 request in the light of the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In the Matter of Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995) (citing *Hungarian Airlines*, 964 F.2d at 100).

### B.     Petitioner Satisfies the Requirements Under § 1782.

44.     A district court has authority to grant an application for judicial assistance pursuant to § 1782 if the following requirements are met: (1) the person from whom discovery is sought must reside and be found in the district of the district court; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the request must be made "by a foreign or international tribunal,"

or by "any interested person"; and (4) the evidence must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).

45.     Each of the statutory prerequisites for this Court to order discovery in aid of the Dutch Action is satisfied. *First*, Respondent is a New York resident residing in Brooklyn, New York and, thus, can be found in this district. *See* Cooper Decl. Ex A.

46.     *Second*, this request seeks the testimony of and the production of documents from Respondent.

47.     *Third*, Petitioner is an "interested person" within the meaning of 28 U.S.C. § 1782. An interested person is one who has significant "participation rights" in the foreign action. *Intel*, 542 U.S. at 256-57. As the Supreme Court noted in *Intel*, "[n]o doubt litigants are included among, and may be the most common example, of the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256. Petitioner is the plaintiff in the Dutch Action, and is thus an "interested person" for the purposes of § 1782.

48.     *Fourth*, the discovery sought is for use in the Dutch Action, which is a "proceeding before a foreign or international tribunal." Indeed, § 1782 "requires only that a dispositive ruling by the [tribunal] be within reasonable contemplation." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015) (quoting *Intel*, 542 U.S. at 259). The Dutch Court ordered the DHB Attachment to attach and freeze the funds in the DHB account jointly controlled by UMG and Petitioner. Further, Petitioner filed its plenary action against UMG on August 12, 2015, regarding repayment of the UMG Loan. Petitioner anticipates that the discovery obtained from the Respondent will be used in connection with the upcoming hearing resolving the merits of the Dutch Action. Petitioner therefore has sufficiently satisfied the requirement that the discovery be sought for use in a foreign proceeding.

49.     Accordingly, Petitioner's request satisfies the statutory elements necessary to permit discovery pursuant 28 U.S.C. § 1782.

**C.     The Court Should Exercise its Discretion to Grant Petitioner the Discovery it Seeks.**

50.     "Once the statutory requirements [of 28 U.S.C. § 1782] are met, the district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004). The Supreme Court has identified a number of factors for courts to consider when ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceeding, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80-81 (2d Cir. 2012). Here, all of these factors weigh in favor or granting the application.

51.     ***First***, where, as here, discovery is sought from a party that is not participating in the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S at 264 (internal citations omitted). Respondent is not a party to the Dutch Action and, thus, the Dutch Court has no jurisdiction to acquire the testimony and documents that Petitioner seeks here.

52.     **Second**, courts must look at the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance by considering "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M 19-88, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (citations omitted). In weighing these elements, courts may only rely on "authoritative proof." *Euromepa*, 51 F.3d at 1100. Here, there is no evidence that the discovery sought in this application would "offend" the Netherlands. Rather, when it granted Petitioner's S.D.N.Y. Application, the S.D.N.Y. Court determined that discovery similar to the type sought here would benefit the Dutch Action. Moreover, U.S. courts have regularly granted similar § 1782 petitions in aid of discovery for proceedings taking place in the Netherlands. *See, e.g.*, *Eco Swiss China Time Ltd. v. Timex Corp*., 944 F. Supp. 134 (D. Conn. 1996); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185 (11th Cir. 2013).

53.     **Third**, this application is not an attempt to circumvent any foreign proof-gathering restrictions and does not violate any Dutch restrictions on gathering evidence. Petitioner has a good-faith basis for believing that he will be able to use these materials in the Dutch Action. *See Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 99 (2d Cir. 2009) (observing that, in *Intel*, the Supreme Court expressly declined to adopt a rule requiring parties seeking discovery under § 1782 to demonstrate that the information would be discoverable in the foreign jurisdiction). Petitioner has no reason to believe that the Dutch Court would not be receptive to the judicial assistance requested, nor is Petitioner aware of any limitation on discovery imposed by the Dutch Court, either generally or specifically, such that the request would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S.

241 at 264-65. The Court's grant of judicial assistance would permit Petitioner to appropriately prosecute its claim against UMG in the Netherlands given that Respondent is in possession of information central to its claim that UMG is in breach of a loan agreement with Petitioner.

54.     *Fourth*, the document requests in the proposed subpoenas are neither unduly burdensome nor intrusive. Petitioner has tailored its request to seek only those materials relevant to the Dutch Action. Moreover, Petitioner believes that the documents sought would all be kept in the ordinary course of business and lend themselves to easy identification and production.

## VI.     CONCLUSION

For the reasons set forth herein, Petitioner respectfully requests that the Court issue an Order, pursuant to 28 U.S.C. § 1782, in the form attached at Appendix B, granting Petitioner leave to serve Igor Daniloff with the subpoenas appended to this Petition at Appendix A.

Dated:  March 8, 2018
       New York, New York

                                  REED SMITH LLP

                                  By:  __/s/ Steven Cooper_____
                                      Steven Cooper
                                      C. Neil Gray
                                      Ian Turetsky
                                599 Lexington Avenue
                                New York, New York 10022
                                Tel: (212) 521-5400
                                Fax: (212) 521-5450
                                scooper@reedsmith.com
                                cgray@reedsmith.com
                                ituretsky@reedsmith.com

                                *Attorneys for Petitioner*
                                  *Bloomfield Investment Resources Corp.*

# APPENDIX A

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | | |
|---|---|---|
| In re Application of Bloomfield Investment<br>Resources Corp. for an Order Directing Discovery<br>from Igor Daniloff Pursuant to 28 U.S.C. § 1782 | )<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Igor Daniloff

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment B

| Place: Reed Smith LLP<br>599 Lexington Avenue, 22nd Floor<br>New York, New York 10022 | Date and Time:<br>04/12/2018 10:00 am |
|---|---|

The deposition will be recorded by this method:   Video and stenographic means

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    03/08/2018

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Bloomfield Investment Resources Corp.                          , who issues or requests this subpoena, are:

C. Neil Gray, Reed Smith LLP, 599 Lexington Ave., New York, N.Y 10022, cgray@reedsmith.com, 212-521-5400

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**
**DOCUMENTS TO BE PRODUCED**

## I.   DEFINITIONS

1.      Petitioner hereby incorporates the Uniform Definitions in Discovery Requests contained in Local Civil Rule 26.3.

2.      "**Respondent**" refers to Igor Daniloff and any of his agents, employees, representatives or any other individual or entity owned by Daniloff or acting for his benefit or on his behalf.

3.      "**Bloomfield**" refers to Bloomfield Investment Resources Corporation, and any of its agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for its benefit or on its behalf

4.      "**Daniloff**" refers to Elliot Daniloff and any of his agents, employees, representatives or any other individual or entity owned by Daniloff or acting for his benefit or on his behalf.

5.      "**David Reuben**" refers to David Reuben and any of his agents, employees, representatives or any other individual or entity owned by David Reuben or acting for his benefit or on his behalf.

6.      "**APK**" refers to JSC Agro-Industrial Complex "Maximovsky" and any of its agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for its benefit or on its behalf

7.      "**ED Capital Entities**" refers to ED Capital, LLC and ED Capital Management, LLC, and any of its or their agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for its or their benefit or on its or their behalf, including, but not limited to, Daniloff.

8.      "**UMG**" refers to Open Stock Company United Meat Group and any of its agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for its benefit or on its behalf.

9.      "**$25 Million Transfer**" refers to the transfer of money from Bloomfield to UMG that occurred on November 11, 2011.

10.     "**Dutch Action**" refers to the action Bloomfield commenced by writ of summons dated April 11, 2015 against UMG.

11.     "**DHB Account**" refers to the bank account opened by UMG at Demir-Halk Bank in the Netherlands.

12.     "**Escrow Agreement**" refers to the August 26, 2016 Escrow Agreement Bloomfield and UMG entered into whereby UMG deposited $4.5 million into an account with ING Bank.

13.     "**Synergy Funds**" refers to Synergy Hybrid Feeder Fund Ltd. and Synergy Hybrid Fund Ltd., and any of its or their agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for their benefit or on their behalf.

14.     "**Bashkirskiy Broiler**" refers to ZAO Bashkirskiy Broiler, a subsidiary of UMG, and any of its agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for its benefit or on its behalf.

15.     "**Note Issuances**" means the issuance of notes by UMG Finance B.V. on December 17, 2013, January 27, 2014 and December 3, 2014.

16.     "**UMG Finance B.V.**" refers to UMG Finance B.V. and any of its agents, employees, representatives, officers, directors, employees, partners, parents, subsidiaries or affiliates or any other individual or entity acting for its benefit or on its behalf

17.     "**Dutch Court**" refers to the Rotterdam District Court in the Netherlands.

## II.   INSTRUCTIONS

1.     Except as otherwise noted, these document requests (the "Requests") cover all Documents or Communications created on or after June 1, 2010 through the present.

2.     In responding to these Requests, Respondent must produce all Documents or Communications in his actual or constructive possession, custody or control or in the actual or constructive possession, custody or control of Respondent's agents, representatives or attorneys.

3.     If any Document or Communication requested or any portion thereof is not produced because of a claim of privilege, pursuant to Local Civil Rule 26.2, furnish a list identifying each Document or Communication for which such claim is asserted and state with respect to each such Document or Communication:

  i.     the type of Document or Communication;

  ii.    the general subject matter of the Document or Communication;

  iii.   the date of the Document or Communication;

  iv.    the author of the Document or Communication, the addressees of the Document or Communication, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

  v.     the nature of the privilege being asserted.

4.     If any Document or Communication, or portion thereof, is withheld on the basis of some other objection, state with particularity the nature of and the complete factual basis for the objection.

5.      If any Document or Communication requested was at one time in existence but is no longer in existence, furnish a list identifying each such Document or Communication, and state with respect to each such Document or Communication:

     i.      the type of Document or Communication;

     ii.     the general subject matter of the Document or Communication;

     iii.    the date of the Document or Communication;

     iv.     the date upon which it ceased to exist;

     v.      the circumstances under which it ceased to exist;

     vi.     the identity or identities of those receiving copies of the Document or Communication;

     vii.    the identity or identities of those having knowledge or who had knowledge of the contents thereof;

     viii.   the job title(s) or position(s) of the author(s) and recipient(s); and

     ix.     the last known business and home address of each person who authored or received the Document or Communication.

6.      Respondent is requested to produce the Documents or Communications for inspection as they are kept in the usual course of business. All Documents or Communications should be produced in the file folder, envelope or other container in which the Documents or Communications are kept or maintained, with all labeling and markings unchanged. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks, including, but not limited to, an indication of from where and from whom the Document or Communication was produced.

7.      Documents or Communication shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found.

8.      Documents or Communications attached to each other should not be separated.

9.      Documents or Communications not otherwise responsive to these Requests shall be produced if such Documents or Communications mention, discuss, refer to, or explain the Documents or Communications that are called for by these Requests, or if such Documents or Communications are attached to Documents or Communications called for by these Requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

10.      Electronically stored information, or "ESI", and digitized (scanned) images must be produced in accordance with the specifications attached hereto as Appendix 1.

11.      These Requests are deemed to be of a continuing nature. If Respondent acquires possession, custody or control, or become aware of any additional Documents or Communications responsive to these Requests after the service of Respondent's response thereto, Respondent shall promptly furnish such additional Documents or Communications to the undersigned attorneys for inspection and photocopying.

**III.     REQUESTS FOR PRODUCTION OF DOCUMENTS**

Respondent is required to bring with him to the deposition the following documents, electronically stored information, or objects, and must permit inspection copying, testing, or sampling of the following material:

1.      Documents and Communications concerning Daniloff's efforts to market or raise funds for UMG or the Synergy Funds, including, but not limited to, all Communications related thereto between Respondent, APK, Daniloff, UMG, or the ED Capital Entities, on the one hand, and David Reuben or Bloomfield, on the other hand.

- 5 -

2.      Documents and Communications concerning the provision or pledge of capital, equity, or assets by David Reuben, Bloomfield, Daniloff, the Synergy Funds or the ED Capital Entities to UMG, APK, or Bashkirskiy Broiler.

3.      Documents and Communications concerning the $25 Million Transfer, including, but not limited to, Documents concerning: (i) the terms or conditions of the $25 Million Transfer; (ii) the location of the proceeds of the $25 Million Transfer; or (iii) the repayment or return of all or part of the proceeds of the $25 Million Transfer.

4.      Documents and Communications concerning the negotiation and execution of the $25 Million Transfer.

5.      Documents and Communications relating to the intended use of or flow of the proceeds of the $25 Million Transfer.

6.      Documents and Communications regarding the actual use or flow of the proceeds of the $25 Million Transfer.

7.      Documents and Communications relating to the decision to transfer all or part of the proceeds of the $25 Million Transfer.

8.      Documents and Communications relating to transfer of funds from UMG to Bashkirskiy Boiler and APK, whether or not through other (related) entities.

9.      Documents and Communications regarding Respondent involvement, relationship, or connection to Daniloff, UMG, APK, Bashkirskiy Broiler, the ED Capital Entities, or the Synergy Funds.

10.     Documents and Communications regarding APK's involvement, relationship, or connection to Respondent, Daniloff, UMG, Bashkirskiy Broiler, the ED Capital Entities, or the Synergy Funds.

11.     Documents and Communications by and between Respondent, APK, UMG or Bashkirskiy Broiler, on the one hand, and David Reuben or Bloomfield, on the other hand.

12.     Documents and Communications relating to or concerning any transfer of money (however characterized) between UMG, Bashkirskiy Broiler, or Synergy Funds, on the one hand, and APK, on the other hand.

13.     Documents and Communications relating to Respondent or Daniloff's other business interests in Russia to the extent those interests also relate to APK, Bashkirskiy Broiler, or UMG, including but not limited to Documents relating to any promise or pledge of APK's, Bashkirskiy Broiler's, or UMG's assets for the benefit of any of Respondent or Daniloff's personal or business interests.

14.     Documents and Communications regarding any financing, subsidies, or other benefits sought or obtained from the Russian government for the benefit of Daniloff, APK, or UMG.

15.     Documents and communications concerning the DHB Account, including documents concerning any and all money transferred to or from the same.

16.     Documents and Communications regarding the $3.3 million released by the Dutch Court on or around July 15, 2015, including, but not limited to, the location or flow of those funds from the time of release to the present.

17.     Documents and Communications concerning any fees or compensation paid to Respondent by Daniloff, the Synergy Funds, APK, UMG, Bashkirskiy Broiler, or the ED Capital Entities.

18.     Documents and Communications regarding the Escrow Agreement.

19.     Documents and Communications related to the Note Issuances, including, but not limited to, documents sufficient to show all fees paid in connection with the Note Issuances as well as the subsequent flow of the funds raised via the Note Issuances.

20.     Documents and Communications related to APK's assets and liabilities, including, but not limited to, all financial statements, cash flow reports, and bank account statements.

21.     Documents and Communications related to UMG's assets and liabilities, including, but not limited to, all financial statements, cash flow reports, and bank account statements.

22.     Documents and Communications related to Bashkirskiy Broiler's assets and liabilities, including, but not limited to, all financial statements, cash flow reports, and bank account statements.

23.     Documents and Communications related to APK's expenditures of capital, including, but not limited to, all evidence of incoming and outgoing funds.

24.     Documents and Communications related to UMG's expenditures of capital, including, but not limited to, all evidence of incoming and outgoing funds.

25.     Documents and Communications related to Bashkirskiy Broiler's expenditures of capital, including, but not limited to, all evidence of incoming and outgoing funds.

26.     Documents sufficient to identify all individuals employed by UMG, including, but not limited to, all members of UMG management or UMG's Board of Directors.

27.     Documents sufficient to identify all individuals employed by APK, including, but not limited to, all members of APK management or APK's Board of Directors.

28.     Documents sufficient to identify all individuals employed by Bashkirskiy Broiler, including, but not limited to, all members of Bashkirskiy Broiler management or Bashkirskiy Broiler's Board of Directors.

## ATTACHMENT B

**I.    DEFINITIONS AND INSTRUCTIONS**

The definitions and instructions set forth in Attachment A are hereby incorporated by reference and shall apply as if fully set forth herein.

**II.    AREAS OF DESIGNATION AND INQUIRY**

1.    The allegations in the Dutch Action.

2.    The $25 Million Transfer, including but not limited to: (i) the terms or conditions of the $25 Million Transfer; (ii) the location of the proceeds of the $25 Million Transfer; or (iii) the repayment or return of all or part of the proceeds of the $25 Million Transfer.

3.    The use or flow of the proceeds from the $25 Million Transfer.

4.    The decision to transfer all or part of the proceeds of the $25 Million Transfer.

5.    Respondent's involvement, connection, or relationship with Daniloff, UMG, APK, Bashkirskiy Broiler, the ED Capital Entities, or the Synergy Funds.

6.    APK's involvement, relationship, or connection to Respondent, Daniloff, UMG, Bashkirskiy Broiler, the ED Capital Entities, or the Synergy Funds.

7.    Communications between Respondent and Daniloff, UMG, APK, Bashkirskiy Broiler, the ED Capital Entities, or the Synergy Funds.

8.    Communications between Respondent and David Reuben or Bloomfield.

9.    Any transfer of money (however characterized) between UMG, Bashkirskiy Broiler, or Synergy Funds, on the one hand, and APK, on the other hand.

10.    Respondent or Daniloff's other business interests in Russia to the extent those interests also relate to APK, Bashkirskiy Broiler, or UMG, including but not limited to

Documents relating to any promise or pledge of APK's, Bashkirskiy Broiler's, or UMG's assets for the benefit of any of Respondent or Daniloff's personal or business interests.

11.     Efforts to market or raise funds for UMG or the Synergy Funds.

12.     The pledge of capital, equity or assets by David Reuben, Bloomfield, Daniloff, the Synergy Funds or the ED Capital Entities to UMG, APK, or Bashirskiy Broiler.

13.     Financing, subsidies, or other benefits sought or obtained from the Russian government for the benefit of Daniloff, APK, or UMG.

14.     The DHB Account.

15.     The $3.3 million released by the Dutch Court on or around July 15, 2015, including, but not limited to, the location or flow of those funds from the time of release to the present.

16.     Fees or compensation paid to Respondent by Daniloff, the Synergy Funds, APK, UMG, Bashkirskiy Broiler, or the ED Capital Entities.

17.     The Escrow Agreement.

18.     The Note Issuances.

19.     APK's assets and liabilities.

20.     UMG's assets and liabilities.

21.     Bashkirskiy Broiler's assets and liabilities.

22.     APK's expenditures of capital.

23.     UMG's expenditures of capital.

24.     Bashkirskiy Broiler's expenditures of capital.

# APPENDIX B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Igor Daniloff Pursuant to 28 U.S.C. § 1782 | **Civil Case No.**<br><br>**PROPOSED ORDER** |

Upon consideration of the petition for assistance in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782 (the "Petition") submitted by Petitioner Bloomfield Investment Resources Corp., and all papers submitted in support thereof, this Court finds that (1) the statutory requirements of 28 U.S.C. § 1782 are satisfied, and (2) the factors identified by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241 (2004), weigh in favor of granting Petitioner's petition. It is therefore:

**ORDERED** that the Petition is granted, and that Petitioner is hereby authorized to serve this Order, all papers submitted herewith, and the subpoenas annexed to the Petition as Appendix A upon Igor Daniloff ("Respondent"); and it is further

**ORDERED** that the Respondent comply with such subpoenas in accordance with, and subject to their rights under, the Federal Rules of Civil Procedure and the Rules of this Court; and it is further

**ORDERED** that this Court will retain jurisdiction over this matter for further proceedings as may be necessary to effect and enforce this Order.

**SO ORDERED**.

Date: _____, 2018

_____
U.S.D.J.